GUARANTEE BOND & MORTGAGE CO. v. HILDING.

1. CONVERSION—SOMETHING MORE THAN WORDS NECESSARY—WORDS MAY BE EVIDENCE OF CONVERSION.

   While a manual possession of the property is not necessary to constitute a conversion, something more than the use of words is necessary, and while the words used may be evidence of a conversion, they are not conversion *per se*.

2. SAME—REFUSAL TO DELIVER IS EVIDENCE OF CONVERSION.

   Generally, refusal to deliver possession pursuant to a lawful demand is not conversion, but only evidence of a conversion.

3. EVIDENCE—ADMISSION AGAINST INTEREST EXPLAINABLE AND NOT CONCLUSIVE.

   The statements in the pleadings are admission against interest and admissible as such, but they may be explained, and are not conclusive.

---

As to whether trover may be predicated upon the mere act of purchasing property from someone other than the true owner, without taking actual possession, see annotation in 38 A. L. R. 1096.

4. Conversion—Bankruptcy—Evidence—Question for Jury.

In an action against a trustee in bankruptcy for the conversion of certain automobiles, the trial judge was in error in holding that undisputed evidence that the trustee went to a garage where the automobiles were stored, posted notices thereon asserting title thereto, and served notice of ownership on the mortgagee established conversion as of the date of posting notices, and the case should have gone to the jury under proper instructions.

5. Same—Amendment—Pleading.

It was not error to permit plaintiff to amend by alleging a different date in its declaration as the date of conversion.

6. Chattel Mortgages—Separate Liens.

Bills of sale (in reality chattel mortgages) created separately liens on the property named in each of them, and were enforceable only for the amount of each upon the property enumerated in them.

7. Bankruptcy—Conversion—Mortgages—Estoppel.

A mortgagee is not estopped from maintaining an action for the conversion of mortgaged automobiles against the trustee in bankruptcy for the mortgagor by the fact that it sought to foreclose its mortgages, which suit was enjoined by the Federal court, nor is it estopped by the fact that it purchased the mortgaged automobiles at the trustee's sale in an attempt to minimize its loss.

Wiest, J., dissenting.

Error to Kent; Perkins (Willis B.), J. Submitted October 12, 1928. (Docket No. 78, Calendar No. 33,844.) Decided March 29, 1929.

Action by Guarantee Bond & Mortgage Company, a Delaware corporation, against Charles V. Hilding for conversion of automobiles. Judgment directed for plaintiff. Defendant brings error. Reversed, and new trial granted.

*J. T. & T. F. McAllister,* for plaintiff.

*Wicks, Fuller & Starr,* for appellant.

Plaintiff financed the operations of the Hermitage Garage & Auto Company, a dealer in new and used cars. It was not a corporation, and a dispute arose, as we shall presently see, as to who was really operating under that name. Plaintiff advanced upwards of $26,000, taking numerous bills of sale covering one or more cars at a time, as the money was from time to time advanced. Upwards of $11,000 of this sum was repaid. Fred W. French was assistant cashier of one of the banks at Grand Rapids. He became very much involved financially, was arrested, and was also declared a bankrupt. Defendant was appointed trustee of the bankrupt estate. From the light defendant then had, he concluded the business of the Hermitage company was owned by French. It was then being operated by one Nelson, doubtless by virtue of a trust mortgage thereon. After his appointment and about the middle of February, 1921, defendant pasted on the windshields of the cars in the garage the following notice:

"Take Notice.

"This automobile is the property of the undersigned, Charles V. Hilding, as Trustee of the Estate of Fred W. French, bankrupt, and shall not be removed from the garage of the Hermitage Garage and Auto Company, Michigan Street and Bond Avenue, Grand Rapids, Michigan, without the written consent of the undersigned Trustee, or without order from the Bankruptcy Court for the Western District of Michigan.

"CHARLES V. HILDING,
"Trustee of the Estate of
"Fred W. French, Bankrupt."

As to this transaction, defendant testified:

"We took the notices, and Mr. Tompkins showed me each car that was not a storage car, supposed

to belong to the garage, and pointed them out to us and I posted the notices on the windshields of those cars. The notice I refer to is marked plaintiff's exhibit 14.

"*Q.* And what else did you do down there?

"*A.* I left; I left the garage.

"*Q.* Left the garage and went away?

"*A.* Yes, sir. Tompkins was in there when I left.

"*The Court:* What did you do? I didn't get that.

"*A.* After posting the notices we left.

"*The Court:* The garage?

"*A.* Left the garage.

"*The Court:* Left it open?

"*A.* Oh, the garage was open; it was in the possession of Nelson, was being run by him, operated there. I simply went there and posted these notices on the cars and went back.

"*The Court:* I see.

"*A.* I had no possession of the garage.

"*Mr. McAllister:* I ask to have that stricken out.

"*Q.* Did you leave any agent or representative in there?

"*A.* I did not. Nelson remained in possession of the garage until the 7th of July; it may have been the 8th. I think you will find the date on the decree, the date the oral opinion was rendered by Judge Sessions."

On the same day defendant served on plaintiff the following:

"Grand Rapids, Michigan.
"February 12, 1921.
"Guarantee Bond & Mortgage Company,
"107 Lyons Street, N. W.,
"Grand Rapids, Michigan.

"Please take notice, that the undersigned, Charles V. Hilding, as Trustee of the Estate of Fred W. French, bankrupt, claims to be and is the owner of the property described in the attached 'List and Description of Automobiles belonging to Charles V.

Hilding, Trustee,' which said property is now in the possession of said Trustee and of the Bankruptcy Court for the Western District of Michigan, at the garage of the Hermitage Garage and Auto Company, Michigan Street and Bond Avenue, Grand Rapids, Michigan.

"Take further notice, that the foregoing property shall not be removed from said garage without the written consent of the undersigned Trustee or without orders from the Bankruptcy Court of the Western District of Michigan.

> "CHARLES V. HILDING,
> "Trustee of the Estate of
> "Fred W. French, Bankrupt."

To which was attached a list of the automobiles involved. Plaintiff countered with a notice claiming the automobiles, and the following day filed a bill in Kent circuit for the foreclosure of its liens. In the bill it was alleged:

"And this plaintiff further shows unto the court that, from the time of execution and delivery of said bills of sale, the said automobiles described in said bills of sale have been in what is known as the Hermitage Garage on the corner of Michigan Street and Bond Avenue and in the possession of this plaintiff and the said Claud B. Tompkins and F. W. French, as copartners, jointly with this plaintiff, and that the said automobiles are now in the said Hermitage Garage and in the possession of Claud B. Tompkins and this plaintiff jointly, the said Claud B. Tompkins being the solvent partner of Claud B. Tompkins and F. W. French, copartners."

There were in other paragraphs similar allegations of possession by plaintiff. A temporary injunction was issued commanding defendant to—

* * * "desist and refrain from taking or attempting to take possession of the said automobiles be-

longing to the Hermitage Garage & Auto Company until the further order of this court in the premises.''

On March 7, 1921, defendant here, as trustee, filed a bill in the U. S. district court alleging that the automobiles belonged to French alone, set up the adverse claim of the present plaintiff, and alleged:

* * * ''And that complainant and petitioner upon ascertaining such facts and upon also ascertaining that certain property belonging to said French, doing business as the Hermitage Garage and Auto Company, had been converted by others to their own use and benefit after the filing of the involuntary petition against said French, took possession of the automobiles covered by said bills of sale and still remaining at said garage as follows: that on the 12th day of February, 1921, complainant 'and petitioner personally took possession of all of the automobiles hereinbefore described, except as hereinafter noted, and posted upon each of said automobiles at said garage the following notice (setting forth the notice above quoted).''

The present plaintiff set up in its answer to the suit in the Federal court:

''This defendant further shows that this defendant is in possession of said automobiles under bills of sale given to it by the said partnership, composed of said Fred W. French and Claud B. Tomkins; that the said Charles V. Hilding never had possession of any of said property and that he has no just or legal right to same.''

Upon the hearing the U. S. district court held that the automobiles were the property of French alone, and that the present defendant was entitled to their possession. Upon appeal the circuit court of appeals reversed the decree of the district court

and held that the automobiles were not the property of French, and that defendant was not entitled to their possession. *Guarantee Bond & Mortgage Co.* v. *Hilding,* 290 Fed. (C. C. A.) 22. In the meantime they had been sold by defendant under order of the referee in bankruptcy, and bid in by plaintiff with an understanding between the parties deferring the question of payment therefor until the decision of the circuit court of appeals. Upon that decision coming down, this action was brought. There is no count for abuse of process, and no count for interfering with plaintiff's sale or right to sell the property to satisfy its lien. The declaration counts solely on conversion. The trial judge directed a verdict against defendant on the ground that the pasting of the notices on the windshields of the cars and the serving of the notice on plaintiff *per se* constituted conversion. He, of necessity, also held that the testimony in the case and the admissions made in pleadings did not take the question of conversion to the jury. The trial judge, therefore, fixed the date of the conversion as February 15, 1921. The importance of this ruling becomes evident from the testimony in the case clearly establishing that the value of the property on the day defendant took physical possession of the property, and on the day he sold it, was much less than its value on February 15, 1921. The assignments of error growing out of this ruling are the only ones meriting extended discussion.

FELLOWS, J. (*after stating the facts*). Writers and courts have used language which tends to support the view of the learned trial judge, that defendant's acts of pasting the notices on the windshields and asserting title in himself were *per se*

a conversion. Indeed, it is somewhat surprising to find such a variety of holdings as to what constitutes conversion. Bacon, in his Abridgment (9 Bouvier's Ed. Bacon's Abridgment, p. 638), said:

"It is not requisite to show a manual taking of the thing in question, nor that the defendant applied it to his own use, to constitute a conversion; the assumption of a right to dispose of it, or the exercise of dominion over it, to the exclusion or in defiance of the plaintiff's right, is a conversion."

And Lord Ellenborough, in *McCombie* v. *Davies*, 6 East. 538, said:

"But taking the case higher up upon principle, I think that the defendant's acts amount to a conversion. According to Lord Holt in *Baldwin* v. *Cole* (a) (6 Mod. 212), the very assuming to oneself the property and right of disposing of another man's goods is a conversion; and certainly a man is guilty of a conversion who takes my property by assignment from another who has no authority to dispose of it; for what is that but assisting that other in carrying his wrongful act into effect."

However, Mr. Greenleaf lays down this rule (2 Greenleaf on Evidence [16th Ed.], p. 588):

"The plaintiff must, in the next place, show that the defendant has *converted* the goods to his own use. A *conversion,* in the sense of the law of trover, consists either in the appropriation of the thing to the party's own use and beneficial enjoyment, or in its destruction, or in exercising dominion over it, in exclusion or defiance of the plaintiff's right, or in withholding the possession from the plaintiff, under a claim of title, inconsistent with his own. It may therefore be either direct or constructive; and of course is proved either directly or by inference. Every *unlawful taking,* with intent to apply

the goods to the use of the taker, or of some other
person than the owner, or having the effect of de-
stroying or altering their nature, is a conversion.
But if it does not interfere with the owner's do-
minion over the property, nor alter its condition, it
is not."

And Mr. Bouvier defines "Trover" as follows
(2 Bouvier's Law Dictionary [Rawle's 1st Ed.],
p. 1142):

"A form of action which lies to recover damages
against one who has, without right, converted to
his own use goods or personal chattels in which the
plaintiff has a general or special property."

In an early Alabama case (*Freeman* v. *Scurlock*,
27 Ala. 407), Chief Justice Chilton, speaking for
the court, said:

"What is conversion? It is not confined to the
unlawful turning, or applying of the personal goods
of another, to the use of the taker. Nor is it neces-
sary to constitute a conversion that the party should
have had the exclusive control or dominion over
the goods, or the actual manucaption of them."

But in an early Vermont case (*Irish* v. *Cloyes &
Morse*, 8 Vt. 30 [30 Am. Dec. 446]), it was held:

"Any mere assertion of the *right* of dominion, is
never permitted to go to the jury, in cases of trover,
as evidence of a conversion, unless the assertion is
made in view of the property, and in presence of the
owner, and in order to deter him from exercising
his just control over it."

The Rhode Island court holds (quoting from the
syllabus in *Donahue* v. *Shippee*, 15 R. I. 453 [8 Atl.
541]):

"To sustain an action of trover it is sufficient to
show a wrongful assumption of dominion by the

defendant over the plaintiff's property, and in violation of the plaintiff's rights."

But the view of the North Carolina court is somewhat different, as expressed in the syllabus of *University* v. *Bank,* 96 N. C. 280 (3 S. E. 359), as follows:

"Conversion consists either in the appropriation of the thing to the party's own use; or in its destruction; or in exercising dominion over it in exclusion or defiance of the plaintiff's rights; or in withholding the possession from the plaintiff, under a claim of title, inconsistent with that of plaintiff, but it must be by *acts,* as bare words will not amount to a conversion."

Without quoting further from the cases from other jurisdictions, it may be said that the following cases are worthy of perusal: *Davis* v. *Buffum,* 51 Me. 160; *Hall* v. *Amos,* 5 T. B. Mon. (21 Ky.) 89 (17 Am. Dec. 42); *Sammis* v. *Sly,* 54 Ohio St. 511 (44 N. E. 508, 56 Am. St. Rep. 731); *Polley* v. *Lenox Iron Works,* 2 Allen (84 Mass.), 182; *Gillet* v. *Roberts,* 57 N. Y. 28; *Sturges* v. *Keith,* 57 Ill. 451 (11 Am. Rep. 28); *Winchester* v. *Joslyn,* 31 Colo. 220 (72 Pac. 1079, 102 Am. St. Rep. 30); *Hall* v. *Merchants' State Bank,* 199 Iowa, 483 (202 N. W. 256, 38 A. L. R. 1093, and note); *Kreher* v. *Mason,* 33 Mo. App. 297; *Spooner* v. *Manchester,* 133 Mass. 270 (43 Am. Rep. 514, note); *Bristol* v. *Burt,* 7 Johns. (N. Y.) 254 (5 Am. Dec. 264).

From an examination of the cases, we are satisfied that the better rule is that while a manual possession of the property is not necessary to constitute a conversion, something more than the use of words is necessary. The words used may be evidence of a conversion, but are not conversion *per se.* This court has, in common with courts generally, held

that refusal to deliver possession pursuant to a lawful demand is not conversion, but only evidence of a conversion. *Felcher* v. *McMillan,* 103 Mich. 494. The language of Mr. Justice Hooker, in *Kunze* v. *Cox,* 113 Mich. 546 (67 Am. St. Rep. 480), is applicable here. He said:

"The action is trover, and, to sustain it, it was necessary that it be shown that some of this property was converted by the defendant. The fact that it was levied upon and advertised is not sufficient to establish a conversion. Some one must have taken it into possession, and deprived the plaintiffs of it, by removal or otherwise, under circumstances which show that the defendant was legally chargeable with such deprivation."

The defendant points to the fact, that in plaintiff's bill for foreclosure, it alleged that the property involved was then (February 15, 1921, the date the trial court held the conversion took place) in possession of plaintiff and one Tompkins, and that such bill was sworn to by plaintiff's president, and defendant insists' that this required the court to direct a verdict in his favor. The plaintiff points to the fact that in defendant's bill in the Federal court, which he swore to, it alleged that he, defendant, was then in the actual possession of the property here involved, and plaintiff insists that this sustains the verdict directed. The statements in the pleadings are admission against interest and admissible as such; they may be explained and are not conclusive. *Bullen* v. *Wakefield Crushed Stone Co.,* 235 Mich. 240. Upon this record, the trial judge was in error in holding that the undisputed evidence established a conversion as of February 15, 1921, and directing a verdict for plaintiff. The case should have gone to the jury under proper instructions.

Without discussion, we will dispose of some minor questions. It was not error to permit plaintiff to amend by alleging a different date in its declaration as the date of conversion. *Sayre* v. *Railway Co.*, 205 Mich. 294; *Hapke* v. *Davidson*, 180 Mich. 138. The bills of sale (in form but in reality chattel mortgages) created separately liens on the property named in each of them, and were enforceable only for the amount of each upon the property enumerated in them. The plaintiff is not estopped from maintaining this action by the fact that it sought to foreclose its mortgages in Kent circuit court, which suit was enjoined by the Federal court on the bill there filed by the defendant, nor is it estopped by the fact that it purchased the automobiles at the trustee's sale in an attempt to minimize its loss.

The judgment must be reversed, and the case sent back for a new trial. Defendant will recover costs of this court.

NORTH, C. J., and FEAD, CLARK, POTTER, and SHARPE, JJ., concurred with FELLOWS, J.

WIEST, J. (*dissenting*). There was a conversion by defendant when he exercised an unauthorized assumption of dominion, as trustee, over the property, to the exclusion of plaintiff. Every subsequent act of defendant related back to his first taking under asserted right to have possession to the exclusion of plaintiff. The acts of interference with the ownership and dominance maintained thereunder, until sale in culmination thereof, were continuous and inseparable. The notice of taking possession, attached to the automobiles and dominance exercised in defiance of plaintiff's rights, constituted a conversion. A very slight interference with the ownership of chattels is sufficient to constitute a conversion. It

was. not necessary that defendant take manual possession of the automobiles. We must consider the act of defendant, as trustee, in the light of his power and duty to take possession of the chattels of the bankrupt and the obligation imposed upon all persons to refrain from interfering therewith. The notice of possession was sufficient to place in peril one interfering therewith. Defendant, as trustee in bankruptcy, was empowered to take possession of the personal property of the bankrupt. As such trustee he exercised the power, and gave notice of taking the automobiles and of dominion thereover, to the exclusion of plaintiff, except as he or the Federal court might permit.

The petition in bankruptcy operated as a *caveat,* that the estate of the bankrupt was to be regarded as in *custodia legis,* and when this was followed by appointment of defendant as trustee empowered to take possession of the estate of the bankrupt and he, as trustee, selected chattels claimed to belong to such estate and attached the notice of possession thereon and maintained right of dominion thereover to the exclusion of plaintiff, he was guilty of conversion if he was without right in the property.

The judgment should be affirmed.

McDONALD, J., did not sit.